HOKE COUNTY BOARD OF EDUCATION, et al., Plaintiffs, and ASHEVILLE CITY BOARD OF EDUCATION, et al., Plaintiff-Intervenors v. STATE OF NORTH CAROLINA; STATE BOARD OF EDUCATION, Defendants

No. COA11-1545

(Filed 21 August 2012)

**1. Constitutional Law—sound basic education—pre-kindergarten—restricted admission**

A trial court order mandating that the State not deny any eligible four-year-old admission to the North Carolina Pre-Kindergarten Program was within the court's authority and was affirmed. Pre-kindergarten is the method by which the State has decided to meet its constitutional duty to prepare all at-risk students to avail themselves of the opportunity to obtain a sound basic education; the State has not produced or developed any alternative plan or method.

**2. Constitutional Law—sound basic education—remedy—pre-kindergarten—jurisdictional basis**

Although the State argued that the trial court did not have a jurisdictional basis to mandate the provision of pre-kindergarten services on a state-wide basis, that was not what the court ordered. The court rejected only the parts of proposed legislation that would deny an at-risk four-year-old an opportunity to obtain a sound basic education by denying admission to an existing program in his or her county.

**3. Constitutional Law—North Carolina—sound basic education—remedy—pre-kindergarten statewide**

The trial court acted within its authority by mandating the unrestricted acceptance of all at-risk four-year-olds seeking enrollment in existing pre-kindergarten programs across the state. The record was replete with evidence that the State's preferred and only remedial aid to at-risk prospective enrollees was a combination of early childhood and pre-kindergarten services as its means of achieving constitutional compliance. Finally, although the State argued that the trial court's authority to order unrestricted admission of at-risk four-year-olds should extend only to Hoke County, the State offered evidence of the implementation and efficacy of pre-kindergarten programs statewide.

**4. Appeal and Error—injunction against enforcement of bill—bill revised—issue dismissed**

An issue on appeal concerning the trial court's injunction against enforcement of a section of a bill involving pre-kindergarten was dismissed where that section of the bill was subsequently rewritten in another bill that was signed into law.

**5. Judgments—findings and conclusions—articulation of court's rationale—specific**

A trial court order concerning pre-kindergarten programs contained sufficient findings and conclusions where the order provided a detailed summary or findings section, followed by a separate section of conclusions. The trial court's rationale was specifically articulated.

**6. Constitutional Law—North Carolina—sound basic education—remedy—not necessarily permanent**

The More at Four (MAF) pre-kindergarten program was the remedy chosen in 2001 to deal with the problem of at-risk four-year-olds, but was not necessarily a permanent solution. The State should be allowed to modify or eliminate MAF by means of a motion filed with the trial court setting forth the basis and manner of any proposed modification.

Appeal by the State from order entered 18 July 2011 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 5 June 2012.

*Attorney General Roy Cooper, by Solicitor General John F. Maddrey, for the State.*

*Robert W. Spearman, Melanie Black Dubis, Scott E. Bayzle of PARKER POE ADAMS & BERNSTEIN, LLP, H. Lawrence Armstrong Jr., of ARMSTRONG LAW, PLLC, and Christine Bischoff of North Carolina Justice Center, attorneys for Hoke County Board of Education, et al.*

*James G. Exum, Jr. and Matthew N. Leerberg of SMITH, MOORE, LEATHERWOOD, attorneys for State . Board of Education.*[i]

ELMORE, Judge.

The State appeals from an order titled "Memorandum of Decision and Order Re: Pre-Kindergarten Services of At-Risk Four Year Olds" which mandates, in sum, that the State 1) not deny any eligible at-risk four year old admission to the North Carolina Pre-Kindergarten Program and 2) not enforce specific provisions of the 2011 Budget Bill. We affirm in part, and dismiss in part.

## I.  Background

The dispute between the parties of this appeal began in 1994, when plaintiffs sought a declaratory judgment regarding the state constitutional requirements of "all North Carolina children to receive adequate and equitable educational opportunities[.]" Since that time, the parties have debated the scope of such constitutional requirements, and the dispute between them has fluctuated through the many levels of our court system.

However, the primary dispute relevant to this appeal began on 4 May 2011, when the North Carolina House of Representatives adopted a budget bill titled "Current Operations and Capital Improvements Appropriations Act of 2011" (the bill). The bill provided "[a]ppropriations from the General Fund of the State for the maintenance of the State departments, institutions, and agencies, and for other purposes as enumerated . . . for the fiscal biennium ending June 30, 2013." *See* 2011 N.C. Sess. Laws 145 § 2.1.

A section of the bill addressed a program called "More at Four (MAF)." MAF was established by the General Assembly in 2001, to provide pre-kindergarten services to at-risk children in order to enhance their kindergarten readiness. The program was established,

in part, as a reaction to a pair of rulings by our Supreme Court, *Leandro I* and *Leandro II*. In *Leandro v. State*, 346 N.C. 336, 347, 488 S.E.2d 249, 255 (1997) (*Leandro I*), the Supreme Court held that "Article I, Section 15 and Article IX, Section 2 of the North Carolina Constitution combine to guarantee every child of this state an opportunity to receive a sound basic education in our public schools." Article I is the "Declaration of Rights." Section 15 of that article states: "The people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." N.C. Const. art. I § 15. The Supreme Court then went on to set forth four minimum criteria for "a sound basic education." These criteria were not static or set in stone for all time, but rather were qualified by phrases such as "to enable the student to function in a complex and rapidly changing society[;]" "successfully engage in post-secondary education or vocational training[;]" to be able to obtain "gainful employment in contemporary society." *Leandro*, 346 N.C at 347, 488 S.E.2d at 255.

Later, in *Hoke Cty. Bd. of Educ. v. State* (*Leandro II*), the Supreme Court established that "the State must help prepare those students who enter the schools to avail themselves of an opportunity to obtain a sound basic education." 358 N.C. 605, 639, 599 S.E.2d 365, 391 (2004). The Supreme Court recognized that "a sound basic education" required the State to address the problem of "at-risk" prospective enrollees in the public schools, but reversed the portion of the of the trial court's order mandating a "pre-kindergarten" program. *Hoke Cty. Bd. of Educ.*, 358 N.C. at 645, 599 S.E.2d at 395. The Supreme Court left it to the legislative and executive branches of government to fashion an appropriate remedy. *Hoke Cty. Bd. of Educ.*, 358 N.C. at 644-45, 599 S.E.2d at 395. Thereafter, MAF was enacted in 2001.

The bill called for MAF to be consolidated into the Division of Child Development, and for that division to be renamed "the Division of Child Development and Early Education (DCDEE)." The bill then directed DCDEE to "maintain the More At Four program's high programmatic standards." *See* 2011 N.C. Sess. Laws 145 § 10.7(a). Specifically, the bill mandated DCDEE to "continue to serve at-risk children identified through . . . methods in which at-risk children are currently served" and to "serve at-risk children regardless of income." *See* 2011 N.C. Sess. Laws 145 § 10.7(f). However, the bill also mandated that "the total number of at-risk children served shall constitute no more than twenty percent (20%) of the four-year-olds served within the prekindergarten program." *Id.*

On 10 May 2011, before the bill became law, plaintiffs filed a motion in Wake County Superior Court requesting a hearing, in relevant part, to address how "the reduction in pre-kindergarten services for at-risk children in the House Budget" would affect the children's rights under the State constitution to "a sound basic education." On 20 May 2011, the trial court sent notice that it would hold a hearing on 22 June 2011 to assess whether certain provisions of the bill complied with *Leandro II*. Specifically, the trial court stated that the subject matter of the hearing would be, in relevant part, the pre-kindergarten services to "at-risk" children and "the obligation of the State of North Carolina, as set forth in *Leandro II*, Section V, to afford 'at-risk' prospective enrollees their guaranteed opportunity to obtain a sound basic education."

On 15 June 2011, the bill became law; however, the trial court proceeded with the hearing. Following the conclusion of evidence, the trial court issued an order on 18 July 2011 titled "Memorandum of Decision and Order Re: Pre-Kindergarten Services of At-Risk Four Year Olds." In that order, the trial court mandated that

1) The State of North Carolina shall not deny any eligible at-risk four year old admission to the North Carolina Pre-Kindergarten Program (NCPK) and shall provide the quality services of the NCPK to any eligible at risk four year old that applies.

2) The State of North Carolina shall not implement or enforce that portion of the 2011 Budget Bill, section 10.7.(f) that limits, restricts, bars, or otherwise interferes, in any manner, with the admission of all eligible at-risk four year olds that apply to the pre-kindergarten program, including but not limited to the 20% cap restriction, or for that matter any percentage cap, of the four year olds served within the prekindergarten program, NCPK.

3) Further, the State of North Carolina shall not implement, apply, or enforce any other artificial rule, barrier, or regulation to deny any eligible at-risk four year old admission to the pre-kindergarten, NCPK.

4) The Court is confident that the State of North Carolina will honor and discharge its constitutional duties in connection with this manner.

The State appeals from this order.

## II. Analysis

The State presents three arguments on appeal: 1) that the trial court exceeded its authority when it ordered the State to provide pre-kindergarten services to all at-risk four year olds in North Carolina; 2) that the trial court erroneously enjoined the implementation or enforcement of properly enacted legislative provisions regarding North Carolina's Pre-Kindergarten Program; 3) that the trial court's order cannot be upheld because it contains no appropriate findings of fact or conclusions of law. The State Board of Education, co-defendants, do not join the State in its appeal.

## A. Authority of order

The State first argues that the trial court exceeded its authority when it ordered the State to "not deny any eligible at-risk four year old admission to the North Carolina Pre-Kindergarten Program." Specifically, the State contends that 1) there is no constitutional requirement for the State to provide pre-kindergarten services, 2) pre-kindergarten services are not a necessary remedy required to provide a sound basic education, and 3) the trial court lacked jurisdiction to mandate pre-kindergarten services on a state-wide basis. We will address the State's constitutional arguments together, as they relate to the Supreme Court's ruling in *Leandro II*. We will then address the State's jurisdictional argument.

### i. Leandro II

[1] In *Leandro II* the Supreme Court addressed, in part, the issue of " 'at-risk' children approaching and/or attaining school-age eligibility" and "whether the State must help prepare those students who enter the schools to avail themselves of an opportunity to obtain a sound basic education." 358 N.C. at 639-40, 599 S.E.2d at 391-92. There, the trial court had concluded that "[i]t was ultimately the State's responsibility to meet the needs of 'at-risk' students in order for such students to avail themselves of their right to the opportunity to obtain a sound basic education[]" and "that State efforts towards providing remedial aid to 'at-risk' prospective enrollees were inadequate." *Id.* at 640, 642, 599 S.E.2d at 392, 393.

On appeal, the Supreme Court concluded "[t]o that point in the proceedings, we agree with the trial court[.]" *Id.* at 642, 599 S.E.2d at 393. However, the Supreme Court reversed the portion of the trial court's order "requiring the State to provide pre-kindergarten classes for either all of the State's 'at-risk' prospective enrollees or all of

Hoke County's 'at-risk' prospective enrollees." *Id.* The Supreme Court reasoned that "such specific court-imposed remedies are rare, and strike this Court as inappropriate at this juncture" because "the suggestion that pre-kindergarten is the sole vehicle or, for that matter, a proven effective vehicle by which the State can address the myriad problems associated with such 'at-risk' prospective enrollees is, at best, premature." Id. at 643, 644, 599 S.E.2d at 393, 394. However, the Supreme Court noted that it

> recognizes the gravity of the situation for "at-risk" prospective enrollees in Hoke County and elsewhere, and acknowledges the imperative need for a solution that will prevent existing circumstances from remaining static or spiraling further, we are equally convinced that the evidence indicates that the State shares our concerns and, more importantly, that the State has already begun to assume its responsibilities for implementing corrective measures.

358 N.C. at 643, 599 S.E.2d at 394.

Now, it has been approximately eight years since the Supreme Court's ruling in *Leandro II*. During this time, the State has had ample opportunity to develop a program that would meet the needs of "at-risk" students approaching and/or attaining school-age eligibility. The only program, evidenced in the record, that was developed by the State since *Leandro II* to address the needs of those students was MAF, a pre-kindergarten program. Thus, unlike the Supreme Court in *Leandro II*, we are not faced with the decision of selecting for the State which method would best satisfy their duty to help prepare those students who enter the schools to avail themselves of an opportunity to obtain a sound basic education. Rather, the State made that determination for itself when in 2001 it developed the pre-kindergarten program, MAF.

Thus, we do not deem it inappropriate or premature at this time to uphold an order mandating the State to not deny any eligible "at-risk" four year old admission to the North Carolina Pre-Kindergarten Program. Under *Leandro II*, the State has a duty to prepare all "at-risk" students to avail themselves of an opportunity to obtain a sound basic education. Pre-kindergarten is the method in which the State has decided to effectuate its duty, and the State has not produced or developed any alternative plan or method. Accordingly, we affirm the trial court's order.

**HOKE CNTY BD. OF EDUC. v. N.C.**

[222 N.C. App. 406 (2012)]

ii. Jurisdiction

**[2]** Although the State next contends "[t]here is no jurisdictional basis in this case to mandate the provision of pre kindergarten services on a state-wide basis," the State mischaracterizes the mandate of Paragraph 1 of the July 2011 Order. The trial court did not order the State to provide pre kindergarten programs for all "at risk" four-year-old prospective enrollees in North Carolina; rather, the trial court's decree rejected those parts of the proposed 2011 legislation that sought to erect "artificial barrier[s] or any other barrier[s]" that would deny any "at risk" four year old prospective enrollee throughout the State his or her constitutional right to an opportunity to obtain a sound basic education by denying that child admission to an existing pre kindergarten program in his or her county. With this clarification in mind, we now examine whether the trial court acted within its authority to mandate the unrestricted acceptance of all "at risk" four-year-old prospective enrollees who seek to enroll in existing pre kindergarten programs in his or her respective county.

**[3]** In *Leandro II*, 358 N.C. 605, 599 S.E.2d 365 (2004), the Supreme Court agreed with the trial court's conclusion that the State's efforts to provide remedial aid to Hoke County's "at risk" prospective enrollees were inadequate to assist such students in availing themselves of their respective rights to an opportunity to obtain a sound basic education. *See Leandro II*, 358 N.C. at 642, 599 S.E.2d at 393. However, the Supreme Court could not ascertain foundational support for the trial court's order "compelling the legislative and executive branches to address that need in a singular fashion" by "requiring the State to provide pre kindergarten classes for either all of the State's 'at risk' prospective enrollees or all of Hoke County's 'at risk' prospective enrollees." *Id.* Although the Supreme Court recognized that, "when the State fails to live up to its constitutional duties," and "if the offending branch of government or its agents either fail to [remedy the deficiency] or have consistently shown an inability to do so, a court is empowered to provide relief by imposing a specific remedy and instructing the recalcitrant state actors to implement it," the Supreme Court also recognized that "such specific court-imposed remedies are rare." *Id.* at 642–43, 599 S.E.2d at 393. Consequently, the Supreme Court determined that the trial court's remedy was "inappropriate at this juncture" for two related reasons: 1) "[t]he subject matter of the instant case—public school education—is clearly designated in our state Constitution as the shared province of the legislative and executive branches"; and 2) "[t]he evidence and findings

of the trial court, while supporting a conclusion that 'at risk'[1] children require additional assistance and that the State is obligated to provide such assistance, do not support the imposition of a narrow remedy that would effectively undermine the authority and autonomy of the government's other branches." *Id.* at 643, 599 S.E.2d at 393.

Nonetheless, in sharp contrast to the record that was before the Supreme Court in *Leandro II*, the record that was developed in the trial court and is now before this Court is replete with evidence, much of which was presented by the State, of the State's preferred——and, incidentally, only proposed—remedial aid to "at risk" prospective enrollees, as reflected in the following unchallenged finding by the trial court:

> The bottom line, seven years after Leandro, II, is that the State, using the combination of Smart Start and the More at Four Pre-Kindergarten Programs, have [sic] indeed selected pre kindergarten combined with the early childhood benefits of Smart Start and its infrastructure with respect to pre kindergarten programs, as the means to "achieve constitutional compliance" for at risk prospective enrollees.

Moreover, the trial court found, and the State does not deny, that the State has touted the measurable statewide success and national recognition of its pre kindergarten program, and has demonstrated the commitment of both the executive and legislative branches to increasing the availability of *Leandro*-compliant pre kindergarten programs. For instance, the chairman of the State Board of Education and the state superintendent of the Department of Public Instruction submitted extensive action plans to the trial court chronicling the pre kindergarten program's to date and proposed future growth and expansion in order to fulfill the State's obligation to comply with the mandates first articulated in *Leandro I*. Additionally, the General Assembly enacted session laws that sought to standardize pre kindergarten program requirements statewide and allocated State funds to facilitate the continued success of pre kindergarten programs available to "at risk" prospective enrollees across the State. In other

---

1. "[M]ost educators seem in agreement that an 'at risk' student is generally described as one who holds or demonstrates one or more of the following characteristics: 1) member of low-income family; 2) participate in free or reduced-cost lunch programs; 3) have parents with a low-level education; 4) show limited proficiency in English; 5) are a member of a racial or ethnic minority group; 6) live in a home headed by a single parent or guardian." *Hoke Cty. Bd. of Educ. v. State*, 358 N.C. 605, 637 n.16, 599 S.E.2d 365, 389–90 n.16 (2004).

words, based on the present record, it cannot be said that the trial court's order requiring the State to allow the unrestricted enrollment of "at risk" prospective enrollees to pre kindergarten programs "effectively undermine[d] the authority and autonomy of the government's other branches," *see Leandro II*, 358 N.C. at 643, 599 S.E.2d at 393, since both the executive and legislative branches have evidenced their selection and endorsement of this—and only this—remedy to address the State's constitutional failings identified in *Leandro II*.

Finally, the State urges that, if the trial court is authorized to order the unrestricted admission of "at risk" prospective enrollees to existing pre kindergarten programs, such authority should only extend to those "at risk" four-year-old prospective enrollees who seek to enroll in programs in Hoke County. In light of the Supreme Court's footnotes 5 and 14 in *Leandro II*, we recognize that the State's assertion is not entirely without basis. *See id.* at 613 n.5, 633 n.14, 599 S.E.2d at 375–76 n.5, 388 n.14. Nevertheless, as the State concedes, it offered evidence to the trial court through its own witnesses attesting to the implementation and efficacy of the pre kindergarten programs made available to "at risk" prospective enrollees *statewide*. Although the State opines that it chose to provide a broader remedy than that which was required to meet the needs of the parties at issue and urges this Court to limit the trial court's mandate to the "at risk" prospective enrollees of Hoke County, we are not persuaded that the record necessitates such restraint of the trial court's order. Accordingly, based on the record before us, we hold that the trial court acted within its authority to mandate the unrestricted acceptance of all "at risk" four year old prospective enrollees who seek to enroll in existing pre kindergarten programs across the State.

## B. Enjoinment of legislation

**[4]** The State next argues that the trial court's order improperly enjoins the enforcement of section 10.7.(f) of the bill. We dismiss this argument.

On 17 May 2012, the House of Representatives introduced a bill titled "AN ACT TO REPEAL THE PROHIBITION ON TEACHER PRE-PAYMENT, CLARIFY ELIGIBILITY FOR THE NC PRE-K PROGRAM, AND ENACT 2012-2013 SALARY SCHEDULES FOR TEACHERS AND SCHOOL ADMINISTRATORS." That bill, in part, entirely rewrote the language of section 10.7.(f) at issue here. On 11 June 2012, that bill was signed into law. As such, section 10.7.(f) is no longer in effect, and we need not address the State's issue regarding its enforcement.

*See Southwood Assn., LTD. v. Wallace,* 89 N.C. App. 327, 328, 365 S.E.2d 700, 701 (1988) (If the issues before the court or administrative body become moot at anytime during the course of the proceedings, the usual response should be to dismiss the action.) (citations omitted). Accordingly, we dismiss this issue.

**C. Sufficiency of findings of fact/conclusions of law**

**[5]** Finally, the State argues that trial court's order must be vacated and remanded because it lacks findings of fact and conclusions of law as required by our Rules of Civil Procedure. We disagree.

According to our Rules of Civil Procedure, "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C. Gen. Stat. § 1A-1, Rule 52 (2012). "The requirement for appropriately detailed findings is . . . not a mere formality or a rule of empty ritual[.]" *Coble v. Coble,* 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980). The rule exists because "[e]ffective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated." *Id.* at 714, 268 S.E.2d at 190. "Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself." *Id.*

Here, the trial court issued a detailed, twenty-four page order which very clearly articulates its chain of reasoning. The order begins by addressing the scope of the issues addressed at the hearing. It states that, "the major issue before the Court is whether or not the General Assembly's 2011 Budget Bill, Section 10.7 (a) through (j) . . . is in conformity with the Supreme Court's decision in *Leandro II.*" The order then summarizes the decision of the Supreme Court in *Leandro II.* Then, after discussing procedural history and precedent, the order describes the history of the MAF program and summarizes the research of the effects of the program. Next, the order focuses on the issues raised by plaintiffs, specifically the allegations regarding Sections 10.7 (a)-(j) of the bill.

Further, in a separate section labeled "Discussion and Decision," the order contains the trial court's conclusions. Specifically, the trial court concluded that

> [based] on the record now before the Court, it appears that the State . . . has taken the prekindergarten program (formerly MAF)

established for at-risk 4 year olds and reduced the number of slots available to at-risk 4 year old upwards of 80% without providing any alternative high quality prekindergarten option for at-risk 4 year olds at all.

\*\*\*

[T]his artificial barrier, or any other barrier, to access to prekindergarten for at-risk 4 year olds may not be enforced.

\*\*\*

Simply put, it is the duty of the State of North Carolina to protect each and every one of these at-risk and defenseless children, and to provide them their lawful opportunity, through a quality pre-kindergarten program, to take advantage of their equal opportunity to obtain a sound basic education as guaranteed by the North Carolina constitution.

Thus, we conclude that the trial court's rationale in reaching its decision is specifically articulated in the order. The order provides a detailed summary or findings section, followed by a separate section of conclusions. As such, we are unable to agree with the State's argument with regards to this issue.

**[6]** Additionally, we would like to emphasize that while MAF was the remedy chosen by the legislative and executive branches in 2001 to deal with the problems presented by "at risk" four year olds, it is not necessarily a permanent or everlasting solution to the problem. What is required of the State to provide as "a sound basic education" in the 21st century was not the same as it was in the 19th century, nor will it be the same as it will be in the 22nd century. It would be unwise for the courts to attempt to lock the legislative and executive branches into a solution to a problem that no longer works, or addresses a problem that no longer exists. Therefore, should the problem at hand cease to exist or should its solution be superseded by another approach, the State should be allowed to modify or eliminate MAF. This should be done by means of a motion filed with the trial court setting forth the basis for and manner of any proposed modification.

### III. Conclusion

In sum, we affirm the trial court's order mandating the State to not deny any eligible "at-risk" four year old admission to the North Carolina Pre-Kindergarten Program. Further, we dismiss the State's argument with regards to the enjoinment of legislation that has been

**IN RE IBM CREDIT CORP.**

[222 N.C. App. 418 (2012)]

repealed. Lastly, we conclude that the trial court's order contains sufficient findings of fact and conclusions of law.

Affirmed in part, dismissed in part.

Chief Judge MARTIN and Judge STEELMAN concur.